■ DINA CANTONE, an Infant, by Her Father and Natural Guardian, RALPH CANTONE, Respondent, v BERNARD ROSENBLUM et al., Defendants, and NASSAU CENTER FOR THE EMOTIONALLY DISTURBED, INC., Appellant.—In an action, *inter alia,* to recover damages for medical malpractice, the defendant Nassau Center for the Emotionally Disturbed, Inc., appeals from

an order of the Supreme Court, Nassau County (Robbins, J.), entered August 15, 1990, which denied its motion for summary judgment dismissing the complaint insofar as it is asserted against it.

Ordered that the order is affirmed, with costs.

This case arises from the alleged failure of the defendants to properly diagnose and treat the plaintiff's severe hearing impairment. The plaintiff was born on November 11, 1969. According to her parents, the plaintiff began exhibiting bizarre behavior after a serious illness at the age of 13 to 14 months. On January 12, 1972, she was examined by the defendant, Harvey J. Gardner, PhD, whose diagnosis was infantile autism.

Gardner's diagnosis was refuted by an audiologist who examined the plaintiff at Lenox Hill Hospital on February 11, 1972, and concluded that she had a severe hearing impairment. It was recommended that she be given a hearing aid and placed on an intensive program of language and speech training. She received such treatment at the Kings County Hospital Speech and Hearing Clinic between April 1972 and July 1972, when her care was transferred to the North Shore University Hospital in Nassau County.

While at North Shore Hospital, the plaintiff came under the care of the defendant Thornton Vandersall, M.D. Dr. Vandersall made a diagnosis of "childhood psychosis" in July 1973 and referred the child to the appellant, Nassau Center for the Emotionally Disturbed, Inc. (hereinafter the Nassau Center) for behavior modification therapy. The amended verified complaint alleges that the defendant Vandersall and others employed at North Shore University Hospital negligently diagnosed the plaintiff as being emotionally disturbed and not hearing impaired, negligently advised that the hearing aids be removed and that the plaintiff discontinue hearing and speech treatment, and instead receive treatment as an emotionally disturbed and autistic child.

The plaintiff was admitted to the Nassau Center facility in September 1973 and attended therapy sessions there through August 1975. At the time of admission, her mother filled out a form indicating that she previously believed her child was deaf. She indicated further that the child had hearing aids but she was advised they were not needed. During the period the child attended the Nassau Center, she came under the care of various psychologists, speech therapists, and teachers.

The plaintiff received a full medical evaluation at the

Albert Einstein College of Medicine in February 1975. This examination confirmed that she had a severe to profound hearing loss. After becoming aware of the plaintiff's hearing impairment, the staff at the Nassau Center modified her treatment and the child allegedly made noticeable progress over the remainder of the time she attended that facility. Thereafter, the plaintiff was admitted to the Mill Neck Manor School for the Deaf in September 1975.

The Nassau Center is one of numerous named defendants charged in the instant action with negligence in connection with the alleged misdiagnosis of the plaintiff's hearing impairment. In support of its motion for summary judgment, the Nassau Center argued that the services it provided were educational in nature and accordingly, it had no duty to diagnose the existence of the plaintiff's hearing deficit. The Nassau Center argued further that the gravamen of the claim against it sounds in educational malpractice, a cause of action that is not recognized in New York (see, *Torres v Little Flower Children's Servs.,* 64 NY2d 119, *cert denied* 474 US 864; *Hoffman v Board of Educ.,* 49 NY2d 121). The Supreme Court denied the Nassau Center's motion and we affirm.

The record belies the Nassau Center's claim that its program was exclusively educational in nature. Full-time psychiatric, psychological, and social work personnel were employed at the facility in order for the Nassau Center to provide clinical as well as educational services. The plaintiff was referred to this facility for behavior modification therapy which involved the administration of clinical psychiatric and/or psychological services. Indeed, at the time the plaintiff was first admitted to the facility, her mother signed a consent form authorizing the Nassau Center's staff to take whatever actions were deemed appropriate for the care, health, welfare, education, and/or treatment of the child.

The claim against the Nassau Center goes beyond mere educational malpractice. It is alleged that the professional staff employed at the facility failed to exercise reasonable care in the initial evaluation of the child and in the administration of a deleterious course of treatment as a result of improper testing and observation. Here, as in *Snow v State of New York* (64 NY2d 745), such factors as the age of the child upon admission, the nature of the facility and the kind of care administered, including the alleged use of an intelligence test inappropriate for deaf children, if established, could form a basis for a finding of medical malpractice against the Nassau Center (cf., *Torres v Little Flower Children's Servs., supra,* at

127, n 2). Accordingly, the Supreme Court properly denied the Nassau Center's motion for summary judgment. Mangano, P. J., Rosenblatt, Ritter and Copertino, JJ., concur.